In the Matter of 230 TENANTS CORPORATION et al., Respondents, v BOARD OF STANDARDS AND APPEALS OF THE CITY OF NEW YORK et al., Appellants.

First Department, April 17, 1984

**APPEARANCES OF COUNSEL**

*Larry A. Sonnenshein* of counsel (*Francis F. Caputo* with him on the brief; *Frederick A.O. Schwarz, Jr., Corporation Counsel*), for Board of Standards and Appeals, appellant.

*Gale Fieldman* for respondents.

SANDLER, J.

On January 6, 1981, the New York City Board of Standards and Appeals (BSA) granted an application by respondent RSP Realty Associates (RSP) for a use variance for its six-story building located at 234-236 East 50th Street in Manhattan. The resolution directed "that substantial construction be completed in accordance with Section 72-23 of the Zoning Resolution." Section 72-23 provides: "A variance granted under the provisions of this resolution shall automatically lapse if substantial construction, in accordance with the plans for which such variance was granted, has not been completed within one year from the date of granting such variance by the Board, or, if judicial proceedings to review the Board's decision shall be instituted, from the date of entry of the final order in such proceedings, including all appeals."

Pursuant to subdivision c of section 668 of the New York City Charter, petitioners and other interested persons appealed the BSA determination to the Board of Estimate. On February 26, 1981, the Board of Estimate declined jurisdiction in the exercise of its discretion. On February 3, 1982 (within one year of the Board of Estimate determination, but more than a year after the BSA determination), RSP applied to the BSA for an extension of time to obtain permits and complete work under the variance, claiming unavoidable and excessive bureaucratic delays despite its good-faith efforts to complete construction. On May 25, 1982, the BSA unanimously adopted a resolution finding, (1) that the prior variance would have expired on February 26, 1982 and that RSP's application for an extension was timely, and (2) that RSP had not been unreasonably dilatory in carrying forward the work according to plans. Accordingly, the BSA amended its January 6, 1981 resolution to provide "that substantial construction shall be completed within one year from February 26, 1982."

On June 22, 1983, by order to show cause, petitioners commenced a proceeding pursuant to CPLR article 78 seeking a judgment annulling BSA's May 25, 1982 determination granting the extension of the variance on the

grounds that BSA acted in excess of its jurisdiction, and that the determination was arbitrary, capricious, and not supported by substantial evidence. BSA moved under CPLR 7804 (subd [f]) to dismiss the proceeding on the limited ground that petitioners lacked standing to bring the proceeding, the notice requesting 14 days to serve an answer in the event the motion was denied. The parties submitted answering and reply affirmations essentially directed to the standing issue.

In a memorandum decision dated January 4, 1983, Special Term denied BSA's motion, holding that petitioners had standing to bring the article 78 proceeding, a determination not contested on this appeal. (See *Matter of Douglaston Civic Assn. v Galvin,* 36 NY2d 1.) Presenting the principal issues on this appeal, Special Term's opinion went on to grant the petition and annul the order of May 25, 1982, concluding that the variance had expired automatically on January 6, 1982, one year from the date of the original grant, and that the BSA accordingly lacked the power to grant the requested extension. In reaching this determination, which effectively rejected BSA's statutorily authorized request to serve an answer in the event its motion was denied, the opinion acknowledged that BSA had not addressed in its moving or opposition papers the issue that the court found dispositive.

■■ We disagree on the merits with Special Term's conclusion that BSA lacked the power under the circumstances to grant the application for an extension. In addition, and notwithstanding that the various papers before Special Term (which included a comprehensive group of relevant exhibits) appeared to exclude any factual issue with regard to the timeliness of BSA's exercise of its power to grant an extension, we do not agree with the abbreviated procedural path that was followed.

Turning first to the procedural issue, CPLR 7804 (subd [f]) provides in pertinent part that: "The respondent may raise an objection in point of law by setting it forth in his answer or by a motion to dismiss the petition, made upon notice within the time allowed for answer. If the motion is denied, the court shall permit the respondent to answer, upon such terms as may be just".

That the Legislature meant what the statutory language so clearly states is confirmed by the following analysis set forth in McKinney's Practice Commentaries (McLaughlin, McKinney's Cons Laws of NY, Book 7B, CPLR C7804:7, p 507):

"The first sentence of this subdivision is identical with the first sentence of CPLR 404 (a). The apparent purpose of the subdivision is to permit a motion under any ground specified in CPLR 3211 and to sanction the unlimited use of affidavits upon such a motion. See C404:1, supra.

"One important difference exists between CPLR 404 (a) and the present subdivision. If respondent's motion is denied CPLR 404 states that the court 'may' permit him to answer, while this subdivision states that the court 'shall' permit him to answer. See 5th Report Leg. Doc. (1961) No. 15, p. 755, which clearly states that this difference was intended."

Notwithstanding the clear meaning and intent of the relevant language in CPLR 7804 (subd [f]), some authority has developed to the effect that a court need not permit a respondent to answer upon denial of its CPLR 7804 (subd [f]) motion if the papers submitted on the motion establish that there remains for determination only an issue of law which is dispositive of the merits. (See, e.g., *Matter of De Vito v Nyquist,* 56 AD2d 159, affd 43 NY2d 681; *Matter of Bayswater Health Related Facility v New York State Dept. of Health,* 57 AD2d 996, 997.) Although we appreciate the considerations that have led to a judicial effort to introduce some flexibility into the application of this section in the interest of expedition and economy, a study of the cases relied upon for this view (a distinctly minority one), suggests that the interpretation advanced in them rests upon an analysis of doubtful validity. Thus, the opinion in *Matter of De Vito v Nyquist (supra),* relied upon language in *Kane v New York State Dept. of Correction* (21 AD2d 919), which on close reading set forth the rule that had been applied under the Civil Practice Act, which it contrasted with the clear statutory language set forth in CPLR 7804 (subd [f]). And in the opinion in *Matter of Bayswater Health Related Facility v New York State Dept. of Health (supra),* the court depended upon authorities that

in turn rested on an opinion of the Court of Appeals in *Matter of Port of N. Y. Auth.* [*62 Cortlandt St. Realty Co.*] (18 NY2d 250, 255), applying CPLR 409 (subd [b]), which explicitly authorizes that procedure in special proceedings other than article 78 proceedings, and not CPLR 7804 (subd [f]), governing article 78 proceedings and clearly to the contrary.

Although persuaded that the procedural shortcut adopted by Special Term cannot be reconciled with the clear language and intent of the controlling section, we appreciate that there are occasions in which the efficient and economical disposition of article 78 proceedings would best be served if the courts were empowered to so act on a motion to dismiss. It not infrequently occurs that the papers submitted on such a motion set forth fully the relevant circumstances and make it clear that the dispositive issue presented is one of law only. In such circumstances, it is difficult to see what appropriate purpose is served by permitting the denial of the motion to be followed by an answer that raises no new factual or legal issue and will merely lead to a second motion addressed to an already determined issue. (See, e.g., *Marlow v Kobliner*, 78 AD2d 874; *Matter of McMullen v Blum*, 70 AD2d 779; *Matter of De Vito v Nyquist, supra;* see, also, Siegel, NY Prac, § 567, p 796.)

Implicit in an agency's reservation of the right to submit an answer in a motion addressed to the legal sufficiency of a petition is the representation that there exists a factual or legal basis to support the agency's action even if the motion is denied. From experience, we know that all too often such reservations are made when no such additional circumstances can be presented, when the purpose is either delay or simply to permit the agency an extended opportunity for further consideration of its position.

It has been suggested in a leading text that the court may require an immediate answer if it concludes that the motion is being made primarily for the purposes of delay. (8 Weinstein-Korn-Miller, NY Civ Prac, par 7804.08.) Although we do not now decide the question, it may well be that there is sufficient flexibility in the statutory pattern to permit adaptation of the procedure set forth in CPLR

3211 (subd [c]) in which the court, after adequate notice to the parties, may treat a motion to dismiss pursuant to CPLR 3211 (subd [a] or [b]) as a motion for summary judgment. Certainly the problem is of sufficient importance to merit fresh legislative consideration.

■ Turning to the merits of Special Term's determination, we observe that the issue of timeliness has been fully argued on this appeal and thus see no impediment to our deciding it at this time. The principle is firmly established, and indeed not disputed by petitioners, that BSA has the inherent authority to grant an extension of a variance upon timely application. (See *Matter of New York Life Ins. Co. v Galvin,* 35 NY2d 52, 59.) The critical issue presented is whether the appeal taken to the Board of Estimate extended the automatic lapse date under section 72-23 of the Zoning Resolution from January 6, 1982, one year after the date of the original order, to February 26, 1982, one year after the date the Board of Estimate declined to entertain the appeal. We conclude that it did, and therefore need not address BSA's claim that its power to extend would in any event survive the expiration of the lapse date.

Significantly, section 72-23 has existed in its present form since 1961, at which time the only method by which a party in the position of petitioners could appeal a BSA determination was by judicial certiorari proceedings under subdivision a of section 668e-1.0 of the Administrative Code of the City of New York. (See *Matter of Cotroneo v Klein,* 62 AD2d 493.) Thus, it is understandable that section 72-23 of the Zoning Resolution makes reference only to "judicial" proceedings to review a BSA determination as extending the automatic lapse date.

As a result of a city-wide referendum on certain proposals approved at the general election held on November 4, 1975, section 668 was added to the New York City Charter. As here relevant, subdivision c of section 668 provides with regard to decisions by the BSA: "Within thirty days of such decision, an appeal may be taken to the board of estimate by an applicant or other interested party, community board or borough board. In the event of an appeal, the board of estimate, in its discretion, may accept jurisdiction in such matter within thirty days after the filing of the

appeal and shall render a decision within thirty days after accepting jurisdiction."

Manifestly, the reason section 72-23 of the Zoning Resolution extends the automatic lapse period for a variance granted under its provisions until after the completion of judicial proceedings is to permit the recipient of the variance to defer construction during the period in which the legality of the variance is under review. From that standpoint, in our view controlling, there is no meaningful difference between judicial proceedings to review a BSA decision and such proceedings before the Board of Estimate. In either case, it would make no sense to require the party obtaining the variance to undertake the expense of construction while the legality of the determination granting the variance is in doubt.

In accordance with this approach, the BSA has construed section 72-23 of the Zoning Resolution as including appeals to the Board of Estimate within the scope of judicial proceedings. That construction seems to us quite reasonable, and should therefore be upheld. (*Matter of Howard v Wyman,* 28 NY2d 434, 438.) Indeed, to treat the two types of review proceedings differently would lead to an absurd result. "In construing statutes, courts have an affirmative obligation to avoid such objectionable consequences (McKinney's Cons Laws of NY, Book 1, Statutes, §§ 141, 145)." (*Matter of Highpoint Enterprises v Board of Estimate,* 67 AD2d 914, 915.)

Accordingly, the judgment of the Supreme Court, New York County (Ernst H. Rosenberger, J.), entered March 15, 1983, which granted the article 78 petition and annulled a determination of the New York City Board of Standards and Appeals should be reversed to the extent appealed from, on the law, without costs, and the matter remanded to afford the BSA an opportunity to file an answer within 10 days of service upon it of this court's order with notice of entry.

KUPFERMAN, J. P., SULLIVAN, ASCH and KASSAL, JJ., concur.

Judgment, Supreme Court, New York County, entered on March 15, 1983, unanimously reversed, on the law, without costs and without disbursements, and the matter

remanded to afford the BSA an opportunity to file an answer within 10 days of service upon it of this court's order, with notice of entry.